**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **JAZMYN WASHINGTON**, | § | |
| ON BEHALF OF HERSELF AND OTHERS | § | |
| SIMILARLY SITUATED | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| vs. | § | CASE NO. 4:23-cv-3368 |
| | § | |
| **PBM ENTERPRISES, INC a/k/a NOMAD,** | § | |
| **MOEED PARVEZ NAGRA,** | § | |
| **BASSAM P NAGRA, AND** | § | |
| **SOHAILA KAUSER, INDIVIDUALS** | § | |
| | § | |
| | § | |
| *Defendants*. | § | **JURY REQUESTED** |

**ORIGINAL COMPLAINT AND JURY REQUEST**

TO THE HONORABLE JUDGE OF THIS COURT

COMES NOW Jazmyn Washington ("Plaintiff"), individually and on behalf of all others similarly situated, complaining of PBM Enterprises, Inc a/k/a Nomad ("Nomad"), Moeed Parvez Nagra ("M. Nagra"), Bassam P Nagra ("B. Nagra"), and Sohaila Kauser ("S. Kauser") individuals, (collectively "Defendants"), and for causes of action will respectfully show unto this Court the following:

**PARTIES AND SERVICE**

1. Plaintiff is a citizen of the United States of America, the State of Texas and resides in Harris County, Texas. Plaintiff's written consent opting into this action is attached as Exhibit A.

2. The Collective Members are all current and former servers (ie. Waiters, waitresses, and the like) who were employed by Defendants at any time beginning three (3) years prior to the filing date of this Complaint to the present.

1

3. Defendant PBM Enterprises, Inc a/k/a Nomad is a Texas company with its principal office located in Houston, Texas. Defendant can be served with process through its registered agent for service of process, CNC Advisors PLLC, at 7457 Harwin Drive, Suite 336, Houston, Harris County, Texas 77036, in any manner the Federal Rules of Civil Procedure permit.

4. Defendant Moeed Parvez Nagra is the owner, manager and director of PBM Enterprises, Inc a/k/a Nomad and may be served at 7600 High Meadow Drive, #4067, Houston, Harris County, Texas 77063, **AND** 3010 S. Rice Ave, Houston, Harris County, Texas 77056 **AND** 2332 Suffolk Drive Houston, Harris County, Texas 77027 **AND** 5887 Westheimer Rd., Suite K, Houston, Harris County, Texas 77057 or wherever he may be found and in any manner the Federal Rules of Civil Procedure permit.

5. Defendant Bassam P Nagra is the owner, manager and director of PBM Enterprises, Inc a/k/a Nomad and may be served at 7600 High Meadow Drive, #4067, Houston, Harris County, Texas 77063 **AND** 3010 S. Rice Ave, Houston, Harris County, Texas 77056 **AND** 2332 Suffolk Drive Houston, Harris County, Texas 77027 **AND** 5887 Westheimer Rd., Suite K, Houston, Harris County, Texas 77057, or wherever he may be found and in any manner the Federal Rules of Civil Procedure permit.

6. Defendant Sohaila Kausar is the owner, manager and director of PBM Enterprises, Inc a/k/a Nomad and may be served at 7600 High Meadow Drive, #4067, Houston, Harris County, Texas 77063 **AND** 2332 Suffolk Drive Houston, Harris County, Texas 77027 **AND** 5887 Westheimer Rd., Suite K, Houston, Harris County, Texas 77057 or wherever she may be found and in any manner the Federal Rules of Civil Procedure permit.

7. The true names, capacities or involvement, whether individual, corporate, governmental or associate, of all managers and owners of Nomad are unknown to Plaintiff.

Plaintiff prays for leave to amend this Complaint to show their true names and capacities when the same have been finally determined. Plaintiff is informed and believes upon such information and belief, that each of the unknown Defendants are negligently, intentionally, strictly liable or otherwise legally responsible in some manner for the events and happenings herein referred to, and negligently, strictly liable intentionally or otherwise caused injury and damages proximately thereby to Plaintiff and those similarly situated.

## JURISDICTION AND VENUE

8. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

9. All parties are subject to personal jurisdiction in the Southern District of Texas. Defendants made themselves subject to this Court's jurisdiction by maintaining a physical presence and business operations in this District.

10. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 (b) & (c) because Defendants reside in this District and most of the relevant facts occurred in this District.

## NATURE OF THE ACTION

11. This is a private civil action brought against Defendants pursuant to Section 16(b) of 29 U.S.C. § 216(b) of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"). Defendants failed to pay any and all of their employed servers the mandatory minimum wage and overtime according to the provisions of the FLSA. Further, Defendants illegally absconded with the tips rightfully earned by their employed server. This collective action seeks to recover the unpaid wages, unpaid overtime wages, and other damages owed to Plaintiff and all other similarly situated employees.

**CONDITIONS PRECEDENT**

12. All conditions precedent to jurisdiction have occurred or been complied with.

**FACTS**

13. PBM Enterprises, Inc a/k/a Nomad ("Nomad") is a Texas based lounge and restaurant located at 5887 Westheimer Road Unit K Houston, Texas 77057, whose hours of operation are Monday through Saturday 11:00 am to 2:00 am and Sunday 12:00 pm to 2:00 am.

14. M. Nagra, B. Nagra and S. Kauser are the owners of Nomad who executed the policies regarding payment to servers and management of servers, including Plaintiff.

15. M. Nagra, B. Nagra and S. Kauser acted directly or indirectly on behalf of Nomad and, at all times mentioned herein were an "employer" or "joint employer" of Plaintiff and the Collective Members within the meaning of the FLSA.

16. M. Nagra and B. Nagra exerted operational and management control over Nomad, including day to day management. They were, and are, frequently present at, own, direct, control and manage the operations at Nomad.

17. M. Nagra, B. Nagra and S. Kauser control the nature, pay structure, and employment relationship of Plaintiff and the Collective Members. M. Nagra, B. Nagra and S. Kauser had, at all times relevant to this lawsuit, the authority to hire and fire employees of Nomad, the authority to direct and supervise the work of employees, the authority to sign on the business' checking accounts, including payroll accounts, and the authority to make decisions regarding employee compensation and capital expenditures. Additionally, M. Nagra, B. Nagra and S. Kauser

were responsible for the day-to-day affairs of Nomad. Specifically, M. Nagra, B. Nagra and S. Kauser are responsible for determining whether Nomad complies with the FLSA.

18. At all material times, Nomad, jointly with its officers/owners M. Nagra, B. Nagra and S. Kauser, has been an enterprise in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(r)(1) of the FLSA because it has more than two employees at the restaurant engaged in commerce, and/or who regularly handled, sold, or otherwise worked on goods and/or materials in their daily work that were moved in interstate commerce. Moreover, because of Defendants' interrelated activities, they function in interstate commerce. 29 U.S.C. § 203(s)(1). Specifically, Defendants' employees have sold, handled or otherwise worked with goods – such as tobacco products and a variety of foods – that have been moved or produced in interstate commerce to Defendants' patrons. Additionally, Defendants' employees have handled materials that have been moved or produced in interstate commerce, which were used in the course of Defendants' business operations.

19. Upon information and belief, Defendants engaged in the acts alleged herein and/or condoned, permitted, authorized, and/or ratified the conduct of its employees and agents, and are vicariously or strictly liable for the wrongful conduct of its employees and agents.

20. At all times during the three (3) years prior to the filing of this action, Defendants categorized all servers that they employed as "independent contractors" and have refused to pay any wages and overtime to such employees.

21. Upon information and belief, Defendants acted in all respects pertinent to this action, as the agent or employee of each other, and carried out a joint scheme, business plan, or policy in all respect thereto and, therefore, the acts of each of these Defendants are legally attributable to the other Defendants, and that these Defendants, in all respects, acted as employers

and/or joint employers of Plaintiff and other similarly situated employees in that each of them exercised control over the wage payments and duties of the servers (i.e. waitresses, waiters and the like).

22. At all times mentioned herein, each and every Defendant was the successor of the other and each assumes the responsibility for the acts and omissions of all other Defendants.

23. At all times relevant to this action, Defendants exercised a great deal of operational and management control over the subject restaurant, particularly in the areas of terms and conditions of employment applicable to Defendants' servers.

24. Plaintiff was originally hired by Defendants as a server approximately fifteen (15) months ago and was never paid on an hourly basis.

25. The primary duty of a server at Nomad is waiting on Defendants' customers before, during, and after their meals by helping them place, receive, and pay for their orders. They also ensure the timely delivery of food, beverages, and hookah by checking on their tables periodically throughout the service time.

26. Plaintiff and the Collective Members often worked multiple shifts per week for Defendants. Plaintiff and the Collective Members were an integral part of Defendants' business which operates as a restaurant and hookah lounge.

27. Defendants exercised significant control over Plaintiff's and the Collective Members' schedule and work during their shifts.

28. Defendants have a set policy of adding eighteen (18) percent gratuity to every bill.

29. Plaintiff and the Collective Members were compensated exclusively through tips from Defendants' customers. That is, Defendants did not pay Plaintiff and the Collective Members any hourly wage whatsoever for the hours worked at their establishment.

30. When Plaintiff and the Collective Members would work during the day shift, they would be paid from the total amount of tips received by all servers from the mandated 18 percent gratuity *after* Defendants had taken out eighteen (18) percent for non-service employees who do not customarily receive tips, including bussers.

31. When Plaintiff and the Collective Members would work during the evening shift, they would be paid from the total amount of tips received by all servers from the mandated 18 percent gratuity *after* the employer had taken out eighteen (18) percent for non-service employees who do not customarily receive tips, including bussers and up to Three Hundred Dollars ($300.00) for each security guard working during that shift.

32. In addition, at no time during their employment were Plaintiff and the Collective Members paid the State and Federal required minimum wage of $7.25.

33. Defendants paid for the building used as Nomad, maintenance of the facility, the sound system, food, beverages, hookah and hookah components, and inventory used at the facility.

34. Defendants made all hiring decisions regarding wait staff, bussers, cooks, security, managerial, and all other employees on the premises.

35. Defendants' opportunity for profit and loss far exceeded Plaintiff's opportunity for profit and loss from work at Nomad.

36. Service and servers are an integral part of Defendants' operations and Defendants need servers to successfully and profitably operate their business model.

37. Defendants failed to maintain complete records of wages, fees, tips, and other gratuities and/or service charges paid to or received by Plaintiff and the Collective Members and failed to maintain and furnish wage statements to Plaintiff and the Collective Members.

38. The amount of skill required of a server is more akin to an employment position than that of a typical independent contractor. Further, Plaintiff and the Collective Members were made to wear specific uniforms over the course of their employment.

39. Plaintiff and the Collective Members were not paid an hourly minimum wage or *any* hourly wage or salary, despite being present at Defendants' facility and required to work and serve its customers during any scheduled work shift.

40. Plaintiff and Collective Members were not paid overtime wages at one-and-a-half (1½) times the regular minimum wage rate for *any* hours worked despite being present at Defendants' facility and required to work and serve its customers for longer than eight (8) hours per shift.

41. Plaintiff and Collective Members employed by Defendants performed precisely the same job duties.

42. Plaintiff and Collective Members employed by Defendants were subject to the terms and conditions of employment and the same degree of control, direction, supervision, promotion and investment imposed or performed by Defendants.

43. Defendants have never paid Plaintiff and the Collective Members any amount as wages.

44. Although Plaintiff and the Collective Members are required to and do in fact frequently work more than forty (40) hours per workweek, they are not compensated at the FLSA mandated time-and-a-half rate for hours in excess of forty (40) per workweek. In fact, they receive no compensation whatsoever from Defendants and thus, Defendants violate the minimum wage requirement of FLSA. *See* 29 U.S.C. § 206.

45. The only source of monies received by Plaintiff (and the class she seeks to represent) relative to her employment with Defendants came in the form of gratuities received directly from customers, a portion of which Plaintiff and the Collective Members were required to pay to Defendants.

46. Defendants' method of paying Plaintiff in violation of the FLSA was willful and was not based on a good faith and reasonable belief that its conduct complied with the FLSA. Defendants misclassified Plaintiff with the sole intent to avoid paying her in accordance with the FLSA; the fees taken from the servers' tips and described herein constitute unlawful "kickbacks" to the employer within the meaning of the FLSA, and Plaintiffs are entitled to restitution of such fees.

47. As a result of Defendants' across-the-board standard operating procedure of mischaracterizing servers as "independent contractors" and their consequential failure to pay any wages or compensation whatsoever, it is a certainty that numerous other current and former servers who were employed by Defendants during the applicable limitations period would elect to participate in this action if provided notice of the same.

48. Plaintiff is "similarly situated" to the 29 U.S.C. § 216(b) class of persons she seeks to represent and will adequately represent the interests of the class.

49. After Defendants were informed of a potential suit, they began requesting other current and former servers to sign a legal release without legal representation in an attempt to absolve them of any ramifications for these unpaid wages.

50. At all times relevant hereto, the Defendants knew of, approved of, and benefited from Plaintiff and the Collective Members' regular and overtime work. Plaintiff and the Collective Members were not "exempt" employees. Defendants knowingly, willfully, and/or with reckless

disregard carried out their illegal pattern and/or practice of failing to pay hourly wages, overtime compensation, and the correct share of their tip with respect to Plaintiff and Collective Members.

### COLLECTIVE ACTION ALLEGATIONS

51. Plaintiff hereby incorporates by reference paragraphs 12 through 47 of this Complaint.

52. At all relevant times, Plaintiff and the Collective Members were individual "employees" of Defendants (as defined in Section 3(e)(1) of the FLSA, 29 U.S.C. § 203(e)(1)).

53. In addition to Plaintiff, Defendants employ many other servers who have the exact same job description as Plaintiff and who were paid by Defendants in the same manner as Plaintiff.

54. Plaintiff brings this action as an FLSA collective action pursuant to 29 U.S.C. § 216(b) on behalf of all persons who were or are employed by Defendants as servers at any time during the three (3) years prior to the commencement of this action to present.

55. Further, each Collective Member is similar to Plaintiff in terms of job duties, pay structure, misclassification as independent contractors and/or the denial of overtime and minimum wage. Thus, although the amount of damages may vary from individual to individual, the damages can be calculated by using a single mathematical formula that is individually applicable to each Collective Member. The Collective Members are, therefore, similarly situated in terms of pay provisions.

56. These non-exempt employees are entitled to the federally mandated minimum wage for any hours worked at or under forty (40) hours per week at a rate at $7.25 per hour, since Defendants violated the tip-pool law they lose the right to take a credit toward minimum wage.

57. These non-exempt employees are entitled to overtime pay, at the rate of one and one-half (1½) their regular rate when those hours exceeded forty (40) hours per workweek, for the same reasons as Plaintiff, and are, therefore, similarly situated to Plaintiff. These employees are collectively referred to as the "Collective Members."

58. Defendants' failure to pay overtime compensation and hours worked at the minimum wage rate required by the FLSA results from generally applicable policies or practices and does not depend on the personal circumstances of the Collective Members.

59. Dozens of these employees have worked for Defendants over the last few years. Accordingly, Defendants' payroll scheme extends well beyond Plaintiff.

60. No justification or exemption excused Defendants from paying Collective Members for all work performed and time spent working, and Defendants did not make a good faith effort to comply with the FLSA. As such, Defendants knowingly, willfully, or with reckless disregard carried out their illegal pattern or practice regarding overtime compensation with respect to the Members of the Class.

61. As such, Plaintiff and Collective Members bring their FLSA claims as a collective action on behalf of the Collective Members. These Collective Members should be notified of this action and given the chance to join pursuant to 29 U.S.C. § 216(b). Therefore, the collective members are properly defined as:

**"All servers employed by Defendants in the three (3) years preceding the filing of Plaintiff's Original Complaint."**

## INDIVIDUAL LIABILITY UNDER THE FLSA

62. In *Lamonica v. Safe Hurricane Shutters, Inc.*, the U.S. Court of Appeals for the Eleventh Circuit held that individuals can be liable for FLSA violations under an expansive interpretation of "employer" for directors and officers. *Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299 (11th Cir. 2013). The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The Fifth Circuit stated "[t]he dominant theme in the case law is that those who have operating control over employees within companies may be individually liable for FLSA violations committed by the companies." *Gray v. Powers*, 673 F.3d 352, 357 (5th Cir. 2012).

63. Where an individual exercises "control over the nature and structure of the employment relationship," or "economic control" over the relationship, that individual is an employer within the meaning of the FLSA and is subject to liability. *Lambert v. Ackerley*, 180 F.3d 997 (9th Cir. 1999). Factors related to "economic control," include ownership interest, operational control of significant aspects of the day-to-day functions, the power to hire and fire employees, determine salaries, and the responsibility to maintain employment records. *Gray*, 673 F.3d at 355 (citing *Williams v. Henagan*, 595 F.3d 610, 615 (5th Cir. 2010)).

64. M. Nagra, B. Nagra, and S. Kauser, as owners and managers of Nomad, are each individually liable for failing to pay Plaintiff's and the Collective Members' wages. The actual identities of other managers and owners and/or affiliated companies are unknown at this time.

## CAUSES OF ACTION

### I. FAILURE TO PAY MINIMUM WAGE PURSUANT TO FLSA, 29 U.S.C. § 206

65. Plaintiff and the Collective Members hereby incorporate by reference paragraphs 12 through 64 of this Complaint.

66. Defendant PBM Enterprises, Inc a/k/a Nomad is a "covered enterprise" because they are a business engaging in commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1). In that said enterprise, they have had employees engaging in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce for any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated) for at least each of the last three years.

67. Defendants failed to pay Plaintiff and the Collective Members minimum wage (or any wages) for all hours worked.

68. Based upon the conduct alleged herein, Defendants knowingly, intentionally and willfully violated the FLSA by not paying Plaintiff and the Collective Members the minimum wage under the FLSA.

69. Throughout the relevant period of this lawsuit, there is no evidence that Defendants' conduct was in good faith and based on reasonable grounds. Due to Defendants' FLSA violations, Plaintiff and the Collective Members are entitled to recover minimum wage compensation and an equal amount in the form of liquidated damages, as well as reasonable attorneys' fees and costs of the action, including interest, pursuant to 29 U.S.C. § 216(b).

## II.   FAILURE TO PAY OVERTIME WAGES PURSUANT TO FLSA, 29 U.S.C. § 207

70. Defendants failed to pay Plaintiff and the Collective Members the applicable overtime wage for each hour in excess of forty (40) during each workweek in which Plaintiff and the Collective Members worked in violation of 29 U.S.C. § 207.

71. An employer who pays a non-exempt employee on an hourly basis must pay time and a half for any hours worked over forty (40).

72. Plaintiff and Collective Members are non-exempt employees who worked as employed servers for Defendants. Even though Defendants did not pay Plaintiff and Collective Members on an hourly basis, they are not exempt from this section due to the fact that Plaintiff and Collective Members were misclassified as "independent contractors." Therefore, they should have been paid on an hourly basis as stated in the section above.

73. Defendants failed to pay Plaintiff and Collective Members the applicable overtime wage for each hour in excess of forty (40) during each workweek in which Plaintiff worked in violation of 29 U.S.C. § 207. Specifically, Plaintiff generally worked between 40 and 60 hours per week. Upon information and belief, there are Collective Members who often worked in excess of 60 hours.

74. By failing to pay Plaintiff and Collective Members overtime at one-and-one-half times their regular rates for every hour that they worked over forty (40) hours in a workweek, Defendants, knowingly, intentionally, and willfully violated the FLSA's overtime provisions.

### III. UNLAWFUL TAKING OF TIPS IN VIOLATION OF THE FLSA, 29 U.S.C. § 203

75. Plaintiff and the Collective Members customarily and regularly received more than thirty U.S. Dollars ($30.00) a month in tips and therefore are tipped employees as defined in the FLSA, 29 U.S.C. § 203(t), see also 29 C.F.R. § 531.50.

76. At all relevant times, Defendants were "employer(s)" or "joint employer(s)" of Plaintiff within the meaning of the FLSA, 29 U.S.C. § 203(d).

77. Under the FLSA:

> "[a]n employer may not keep tips received by its employees for any purpose including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not it takes a tip credit."

> 29 U.S.C. § 203(m)(2)(B)

78. Defendants required Plaintiff and the Collective Members to participate in an illegal tip pool, which included employees who do not customarily and regularly receive tips, and do not have more than a *de minimis*, if any, interaction with customers leaving the tips (such as the busser, and security). *See* U.S. Department of Labor, Wage and Hour Division, "Fact Sheet # 15: Tipped employees under the Fair Labor Standards Act (FLSA)."

79. The contribution Defendants required Plaintiff and the Collective Members to make after each shift was arbitrary and capricious and distribution was not agreed upon by Plaintiff or other servers; rather, it was imposed upon Plaintiff and the Collective Members.

80. By requiring Plaintiff and the Collective Members to pool their tips, Defendants essentially "retained" a portion of the tips received by Plaintiff and the Collective Members and used the tip money owed to the Plaintiff and the Collective Members to pay other non-tipped employees.

81. Defendants did not make any effort, let alone a "good faith" effort, to comply with the FLSA as it relates to compensation owed to Plaintiff and the Collective Members.

82. At the time of their illegal conduct, Defendants knew or showed reckless disregard that the tip-pool which they required Plaintiff and the Collective Members to contribute included non-tipped employees, and therefore, was statutorily illegal. In spite of this, Defendants willfully failed and refused to pay Plaintiff and the Collective Members the proper amount of the tips to which they were entitled.

83. Defendants' willful failure and refusal to pay Plaintiff and the Collective Members the tips they earned violates the FLSA.

### IV.  ILLEGAL KICKBACKS & FORCED TIPPING IN VIOLATION OF THE FLSA, 29 C.F.R. § 531.35

84. Defendants required Plaintiff and the Collective Members to pay monetary fees to other Nomad employees who did not work in positions that are customarily and regularly tipped, in violation of 29 U.S.C. § 203(m).

85. Defendants' requirement that Plaintiff and the Collective Members pay fees to Defendants' other employees violates the "free and clear" requirement of 29 C.F.R. § 531.35.

86. Because Defendants violated the "free and clear" requirement of 29 C.F.R. § 531.35 as alleged above, they are not entitled to utilize the FLSA's tip-credit provision with respect to Plaintiff's and the Collective Members' wages.

87. Due to the violation stated above, all monetary fees imposed on Plaintiff and the Collective Members are classified as illegal kickbacks.

## DAMAGES

88. Due to Defendants' FLSA violations, Plaintiff and the Collective Members are entitled to recover from Defendants minimum wage compensation and an equal amount in the form of liquidated damages, as well as reasonable attorneys' fees and costs of the action, including interest, pursuant to 29 U.S.C. § 216(b).

89. Due to Defendants' FLSA violations, Plaintiff and the Collective Members are entitled to recover from Defendants, overtime wage compensation and an equal amount in the form of liquidated damages, as well as reasonable attorneys' fees and costs of the action, including interest, pursuant to 29 U.S.C. § 216(b).

90. As a result of the acts and omissions of the Defendants as alleged herein, and pursuant to 29 U.S.C. § 216(b) and 260, Plaintiff and the Collective Members are entitled to damages in the form of all misappropriated tips, plus interest as liquidated damages, an amount equal to all misappropriated tips, mandatory attorneys' fees, costs, and expenses.

91. Plaintiff and the Collective Members are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

92. Plaintiff and the Collective Members are entitled to recover from Defendants all fees that Defendants required Plaintiff and Collective Members to pay other employees in order to work at Nomad, involving but not limited to forced tip sharing.

## JURY REQUEST

93. Plaintiff hereby requests a trial by jury.

**RELIEF REQUESTED**

Plaintiff ad Collective Members respectfully request the following relief:

1. An Order allowing this action to proceed as a collective action under the FLSA and directing notice to the Collective Members;

2. Judgment awarding Plaintiff and the Collective Members all unpaid wages, unpaid overtime compensation, unpaid tips, liquidated damages, statutory penalties, civil penalties, attorneys' fees and costs under the FLSA;

3. An award of pre-judgment and post-judgment interest on all amounts awarded at the highest rate allowable by law; and

4. All such other and further relief that Plaintiff and the Collective Members are justly entitled.

Respectfully submitted,

**STEPHENS REED & ARMSTRONG, PLLC**

By: */s/ Derrick A. Reed*
    **Derrick A. Reed**
    Attorney-in-Charge
    Federal I.D. No.: 899172
    State Bar No.: 24053780
    Email: derrick@srapllc.com
    **Marrick Armstrong**
    Federal I.D. No.: 611068
    State Bar No. 24057695
    Email: marrick@srapllc.com
    **Ghazal A. Vahora**
    Federal I.D. No.: 2861474
    State Bar No.: 24094993
    Email: ghazal@srapllc.com
    2626 South Loop W., Suite 522
    Houston, Texas 77054
    Telephone: (281) 489-3934
    Facsimile: (281) 657-7050

**ATTORNEYS FOR PLAINTIFFS**